158 Wis.2d 712 (1990)
463 N.W.2d 403
IN RE the PATERNITY OF P.L.S.:
R.M.J., II, Appellant,[]
v.
STATE of Wisconsin, K.M.S. and P.L.S., Respondent.
No. 89-1246.
Court of Appeals of Wisconsin.
Submitted on briefs March 12, 1990.
Decided October 25, 1990.
*714 For the appellant the cause was submitted on the briefs of Rusch & Rusch Law Office, S.C., by Robert P. Rusch, of Medford.
For the respondent the cause was submitted on the briefs by Lawrence R. Heath, corporation counsel for Oneida county, of Rhinelander.
Before Eich, C.J., Gartzke, P.J., and Sundby, J.
GARTZKE, P.J.
J. appeals from an order denying his motion to vacate a judgment in a paternity action declaring him to be the father of a child born in April 1982 to a named mother. He contends that the judgment is void because his trial counsel was ineffective. The dispositive issue is whether the respondent in this paternity action has a constitutional right to effective assistance of counsel. We conclude he does not. We therefore affirm.
This action was brought by the corporation counsel for Oneida County in February 1987. The trial court granted J.'s request that counsel be appointed for him because he was indigent.[1] Blood tests were taken of J. *715 and two other men, K. and P., who had intercourse with the mother during the conceptive time period. The report on J. stated that he could not be excluded as the father and, "[t]he combined paternity index (genetic odds in favor of paternity) is 250. The relative chance of paternity, assuming a 50% prior chance, is 99.60. Paternity is extremely likely. 98.85% of falsely accused men would be excluded as the father by the above tests." The reports as to K. and P. stated that they were each excluded as the father.
The proceedings culminated in a jury trial in March 1988. The jury found that J. is the father, and the trial court entered judgment to that effect. In June 1988 the state public defender appointed another attorney to represent J. on postconviction motions. That attorney moved for a new trial on grounds that trial counsel had been ineffective. The motion raises counsel's failure to adequately investigate the possibility of calling medical and mathematical expert witnesses to attack the blood test results.
The trial court refused to hold an evidentiary hearing on the effectiveness of J.'s trial counsel, on grounds that he had no right to effective assistance in a paternity case. The court also ruled, however, that J.'s trial counsel had indeed provided effective assistance.
On appeal J. contends that he had a constitutional right to effective assistance of counsel, and because his right was violated he should have a new trial. Much of his argument is concerned with whether he, as an indigent, has a right to counsel under the due process clause *716 in the fourteenth amendment to the United States Constitution and under Wisconsin's equivalent provision, Wis. Const. art. I, sec. 1. See State ex rel. Milwaukee Medical College v. Chittenden, 127 Wis. 468, 506, 107 N.W. 500, 512 (1906) (Wis. Const. art. I, sec. 1 guarantees due process of law). He contends that because he has that right, he also has a right to effective assistance of counsel.
[1-3]
We have some concern whether we should address the constitutional issue. A claim of ineffective assistance of counsel in a criminal trial must be raised at a hearing in the trial court, "at which trial counsel can testify concerning the reasons behind the action taken." State v. Mosley, 102 Wis.2d 636, 657, 307 N.W.2d 200, 212 (1981). Without such a hearing an appellate court lacks an adequate record to review the issue. Id. Whether counsel appointed in a criminal case rendered effective representation involves questions of mixed fact and law. Strickland v. Washington, 466 U.S. 668 (1984).
Because no evidentiary hearing has been held on J.'s claim of ineffective assistance, we cannot reach that issue, except to note that the trial court should not have ruled on it without hearing the testimony of trial counsel. For that reason, deciding whether J. has a constitutional right to effective assistance of counsel in a paternity action may be premature.
The problem of prematurity arises because our state supreme court "has frequently concluded that it need not address a claim of constitutional error if the claim can be resolved on statutory or common law grounds." State v. Dyess, 124 Wis.2d 525, 533, 370 N.W.2d 222, 227 (1985) (citations omitted). Whether or not J. has a constitutional right to effective assistance of counsel, it may be *717 that he had effective assistance. In that event, the constitutional issue does not arise.
We conclude, however, that in this chicken and egg situation, we should address the constitutional issue. While the issue whether J.'s trial counsel was effective does not arise unless he has a right to effective assistance, whether he has the right is not an issue if he had effective assistance. One of the two issues must be resolved before the other. Given these circumstances, we choose in this case to decide the constitutional issue. We examine it first in light of the United States Constitution and then under the Wisconsin Constitution.
J. had trial counsel. For that reason, we need not decide whether an indigent in a state-initiated paternity proceeding has a constitutional right to have counsel appointed for him. The question is whether, having had appointed trial counsel, J. had a constitutional right to effective assistance by that counsel.
The sixth amendment to the United States Constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This guarantee binds the states by virtue of the fourteenth amendment. Powell v. Alabama, 287 U.S. 45, 68 (1932). "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).
[4]
The right to effective assistance of counsel under the sixth amendment is unaffected by a party's indigency. For purposes of determining whether a defendant has been accorded effective assistance of counsel, it is immaterial whether defendant has privately retained trial counsel or had appointed counsel because of indigency. Cuyler v. Sullivan, 446 U.S. 335, 344-45 (1980).
*718 A paternity action, however, is not a criminal prosecution. It is no crime to sire a child, in or out of wedlock.
There was a time when paternity actions were aptly referred to in this state as "quasi-criminal." Paternity actions were once commenced on the complaint of a mother to any justice of the peace who was required to "issue his warrant against the person accused, directed to the sheriff or any constable of his county, commanding him forthwith to bring such accused person before the justice, to answer such complaint." Chapter 31, Sec. 1, Stats. (1849). The issue was "whether the accused is guilty or not guilty." Chapter 31, Sec. 6, Stats. (1849).
Accordingly, as recently as 1979 the Wisconsin supreme court observed: "Historically paternity was established by quasi-criminal proceedings which were viewed as a means of reducing the public burden of supporting illegitimate children who were or might become public charges." In re R.W.L., 116 Wis.2d 150, 157, 341 N.W.2d 682, 685 (1984) (emphasis added). The R.W.L. court immediately added: "In more recent years society has come to recognize that the primary interest in the paternity action is that of the child." 116 Wis.2d at 158, 341 N.W.2d at 685.
A paternity action is no longer "quasi-criminal." Even when criminal procedure governed the action, the "quasi-criminal" designation was considered "extremely misleading unless treated as merely descriptive of the procedure in the action. . . . There is no such action as a quasi-criminal action. . . . The proceeding is a civil action. . . ." State ex rel. Mahnke v. Kablitz, 217 Wis. 231, 234-35, 258 N.W. 840, 842 (1935).
A paternity action is no longer governed by criminal procedure. It is governed by Ch. 767, Stats., entitled "actions affecting the family." The child, mother, or state may bring the action. Section 767.45(1), Stats. The *719 provisions of ch. 767 regarding summons, service, burden of proof, and other matters are civil in nature. The respondent may not be prosecuted or subjected to any penalty or forfeiture for or on account of "any matter testified to or evidence given relating to the paternity of the child . . ., except for perjury. . . ." Section 767.47(4), Stats. If the respondent is adjudged to be the father, and is ordered to pay allowance, such as future support, "disobedience of the court order with respect to the same is punishable under ch. 785 [contempt of court] by commitment to the county jail or house of correction . . . ." Section 767.37(1)(a), Stats., so provides, but also applies to numerous other civil actions affecting the family, including annulment, divorce, legal separation, custody, and for child support, maintenance payments or property division. Section 767.02(1), Stats. The record is closed, with access limited to the child's parents, the parties, and their attorneys. Section 767.53, Stats.
[5]
We conclude that a paternity action is in no sense a criminal prosecution. The respondent in such an action cannot predicate a right to effective assistance of counsel on the sixth amendment to the United States Constitution.
The question remains whether J. has a right to effective assistance of counsel by virtue of any other provision in the United States Constitution. The only other pertinent provisions are the due process provision in the fifth amendment, made applicable to the states by the fourteenth amendment, and the fourteenth amendment itself, which provides in part: "Nor shall any State deprive any person of life, liberty or property, without due process of law; . . . ."
Due process analysis requires that we first determine whether state action is involved. This action was *720 initiated by the state. The state appointed counsel for J. State action is involved.
Once state action is shown, we balance three factors to determine the specific dictates of due process:
"[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."
Rucker v. DILHR, 101 Wis.2d 285, 292, 304 N.W.2d 169, 173 (Ct. App. 1981), quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976).
If this judgment stands, J. will be declared the father of the child and probably will be ordered to contribute child support money. The record shows that the sexual intercourse between J. and the mother was consensual and that J. was legally separated from his wife at the time. Little opprobrium attaches to the determination that he is the father, and the little that could attach is reduced by closing the record from public access pursuant to sec. 767.53, Stats. J. therefore has two private interests that will be affected by state action: first, in the determination whether he is the biological father; second, in the financial responsibility accompanying a finding that he is the father.
The first interest is not constitutionally protected.
Resolving the question whether there is a causal connection between an alleged physical act of a putative father and the subsequent birth of the plaintiff's child sufficient to impose financial liability on the *721 father will not trammel any preexisting rights; the putative father has no legitimate right and certainly no liberty interest in avoiding financial obligations to his natural child that are validly imposed by state law. In the typical contested paternity proceeding, the defendant's nonadmission of paternity represents a disavowal of any interest in providing the training, nurture and loving protection that are at the heart of the parental relationship protected by the Constitution. See Lehr v. Robertson, 463 U.S. 248, 261 (1983). Rather, the primary interest of the defendant is in avoiding the serious economic consequences that flow from a court order that establishes paternity and its correlative obligation to provide support for the child.
Rivera v. Minnich, 483 U.S. 574, 579-80 (1987) (footnote omitted).
In Lehr v. Robertson, the United States Supreme Court distinguished between the man who seeks to establish that he is the biological father of a child with whom he has developed a relationship, and the man who seeks to establish that he is the father but has not developed a significant relationship with the child. The Lehr court held that the man who demonstrates a full commitment to the responsibilities of parenthood has an interest which acquires substantial protection under the due process clause, "but the mere existence of a biological link does not merit equivalent constitutional protection. The actions of judges neither create nor sever genetic bonds." 263 U.S. at 261.
[6]
We conclude on the basis of Lehr v. Robertson and Rivera v. Minnich that a respondent who contests a paternity action has no interest protected by the due process clause of the fourteenth amendment in the question whether he is or is not the biological father.
*722 [7]
We turn to the financial interests of a respondent who contests a paternity action. The Rivera court impliedly recognized that those interests qualify as "property" for purposes of due process analysis. 483 U.S. at 580. However, the Rivera court concluded that "the equipoise of the private interests that are at stake in a paternity proceeding supports the conclusion that the standard of proof normally applied in private litigation is also appropriate for these cases." 483 U.S. at 581. For that reason, the Rivera court held that due process does not require a standard higher than the preponderance of the evidence, the standard applied under the state statutes under consideration in that case. 483 U.S. at 575, 582. We conclude on the basis of Rivera that the financial interests of a respondent who contests paternity proceedings are not entitled to constitutional protections other than those usually afforded in private litigation.
[8]
Having concluded that J.'s only interest is financial, we need not continue with the rest of the Eldridge test. Although litigants in private litigation have a right to appear by counsel,[2] we are aware of no precedent holding in a civil case involving only a property interest that a person whose counsel was ineffective is entitled by virtue of the due process clause to a new trial. The Wisconsin court of appeals has held that parties in civil cases do not have such a right. Village of Big Bend v. Anderson, 103 Wis.2d 403, 308 N.W.2d 887 (Ct. App. 1981); In re S.S.K., 143 Wis.2d 603, 611, 422 N.W.2d 450, 453 (Ct. App. 1988).
The next question is whether J. has greater rights under the Wisconsin Constitution than under the *723 United States Constitution. J. has not shown that he does.
The Wisconsin Constitution, art. I, sec. 7, provides in part: "In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; . . . ." No right to effective assistance of counsel in such proceeding can be found in this provision. A paternity proceeding is not a criminal prosecution, State ex rel. Mahnke v. Kablitz, 217 Wis. 231, 234-35, 258 N.W. 840, 842 (1935).
[9]
The Wisconsin Constitution, art. I, sec. 1 embraces the right to due process. State ex rel. Milwaukee Medical College v. Chittenden, 127 Wis. at 506, 107 N.W. at 512. We may afford greater protection to the liberties of persons within our boundaries than are mandated by the United States Supreme Court under the fourteenth amendment. State v. Doe, 78 Wis.2d 161, 171, 254 N.W.2d 210, 215-16 (1977). However, the parties offer no reasons why the due process protection in our state constitution should be interpreted differently from that in the United States Constitution. We do not review constitutional issues raised but not argued. Dumas v. State, 90 Wis.2d 518, 523, 280 N.W.2d 310, 313 (Ct. App. 1979). We decline to consider the state due process issue further.
We hold that the trial court properly declined to vacate its judgment.
By the Court.Order affirmed.
SUNDBY, J. (dissenting).
This appeal presents an important question of first impression: Is an alleged father in a paternity action for whom counsel has been appointed under sec. 767.52(1), Stats., entitled to effective *724 assistance of counsel?[1] I conclude that the right to state-appointed counsel under sec. 767.52(1), includes the right to effective assistance of counsel. Therefore, I respectfully dissent.
Unlike the majority, I do not find a constitutional issue in this case. The legislature has made it unnecessary for us to consider whether J. had a right under the federal or state constitution to assistance of counsel. Therefore, we are presented with a question of statutory construction: When the legislature gave to J. the right to counsel, did it intend to give him the right to effective counsel? I agree with what the court said in In re Smith, 573 A.2d 1077 (Pa. Super. 1990). In Pennsylvania, the right of a juvenile to assistance of counsel has been codified in the state's Juvenile Act. The court said:
To assume that what is meant by assistance of counsel does not include the concept of able, effective representation is to ascribe to the statute a ludicrous result, that is, that such counsel need not be able to perform appropriately, or indeed at all, to fulfill the legislative mandate.
Id. at 1079.
The majority relies on the civil/criminal distinction. This distinction has been characterized as "wooden." *725 Banks v. Randle, 486 A.2d 974, 976 (Pa. Super. 1984) (citing In re Gault, 387 U.S. 1 (1967)). The civil/criminal distinction has been abandoned in favor of an emphasis on the nature of the threatened deprivation. Id.
Thus, in a variety of non-criminal contexts, courts have concluded that, where significant rights of the individual are implicated, the right to counsel for otherwise defenseless persons is a firmly established tenet of procedural due process, and that the right to counsel means the right to effective counsel. As far back as In re Gault, the United States Supreme Court recognized that "the guiding hand of counsel" is essential to otherwise defenseless persons whose liberty or property interests may be adversely affected by state action. In re Gault, 387 U.S. 1, 36 (1967). Gault extended the right to assistance of counsel to juveniles in delinquency proceedings. The Court noted the "forceful" statement of the National Crime Commission that constitutional rights have substantial meaning for the overwhelming majority of persons brought before the juvenile court "only if they are provided with competent lawyers who can invoke those rights effectively." Id. at 38 n.65.
In Banks, the court decided that due process entitled a defendant in a paternity action to the effective assistance of counsel. The court said:
Given the recognition of the right to counsel for paternity defendants . . . we find it impossible to deny such a defendant the right to effective assistance of counsel. It is axiomatic that the right to the assistance of counsel means the right to the effective assistance of counsel. . . . Indeed, without the guidance of competent counsel, appellant's right to representation would be rendered worthless. Thus, were we to hold that a paternity defendant's right to counsel does not require the effective assistance of counsel, *726 we would be exalting form over content. . . . To relegate appellant to the civil remedy of a malpractice suit for money damages is no remedy at all for the potential loss of liberty and the seriousness and permanence attached to an adjudication of paternity.
Banks, 486 A.2d at 977 (citations omitted). The theme is consistent regardless of whether the right to counsel is conferred by the legislature, or found in the federal or state constitution: the right to counsel includes the right to effective counsel.
The majority cites In re S.S.K., 143 Wis.2d 603, 611, 422 N.W.2d 450, 453 (Ct. App. 1988) where we held that a mother did not have a claim for ineffective assistance of counsel in a child-in-need-of-protection-or-services proceeding. We were influenced by the lack of permanency of a CHIPS determination. Id. However, a judgment or order determining paternity "is determinative for all purposes." Sec. 767.51(1), Stats. Further, we did not consider the legislature's intent in mandating counsel for the mother, nor did we analyze the mother's claim under the due process clause.
In In re T.L., 151 Wis.2d 725, 737, 445 N.W.2d 729, 734 (Ct. App. 1989) we said that counsel appointed under sec. 48.23(2)(a) and (6), Stats., to represent a parent in a CHIPS proceeding had a duty "to provide his client with zealous, competent and independent representation." (Emphasis added.) We pointed out that counsel was bound under Supreme Court Rule 20:1.1 to "provide the client with competent representation." Id. To suggest, as the majority does in footnote 1, that the indigent client has an adequate malpractice remedy against his or her ineffective counsel is to ignore the reality of poverty.
In providing J. with counsel, the legislature intended to even the odds when the resources of the *727 state are marshalled against an indigent respondent in a paternity action. Our decision today skews the odds in the state's favor. I cannot join it.
NOTES
[] Petition to review denied.
[1] Sec. 767.52(1), Stats., provides:

At the pretrial hearing, at the trial and in any further proceedings in any paternity action, any party may be represented by counsel. If the respondent is indigent and the state is the petitioner under s.767.45(1)(g) or the petitioner is represented by a government attorney as provided in s.767.45(6), counsel shall be appointed for the respondent as provided in ch. 977, unless the respondent knowingly and voluntarily waives the appointment of counsel.
Section 977.08(2)(h), Stats., provides for assignment of counsel by the state public defender for paternity cases.
Section 767.52(1), Stats., is silent as to whether a new trial must be granted if counsel is ineffective. It makes no sense to infer, as does the dissent, a right to a new trial for ineffective assistance of counsel from the fact that counsel was appointed. The statutory right to be represented by counsel extends to all parties, those who can afford counsel as well as the respondent who cannot. If an indigent is entitled to a new trial for ineffective assistance of appointed counsel, then so is any party whose private counsel was ineffective. The statute simply does not so provide, and such a result cannot have been intended.
[2] See Powell v. Alabama, 287 U.S. at 69 (due process denied in civil or criminal case if court refuses to hear party by counsel).
[1] Our answer to this question has broader application than paternity actions. Indigent persons subject to emergency detention or involuntary civil commitment under ch. 51, Stats., have the right to have an attorney provided at public expense. Secs. 51.15(9); 51.20(3); 977.05(4)(i)4, Stats. Children subject to proceedings under ch. 48, Stats., shall be provided legal representation as provided in sec. 48.23. The public defender shall provide legal services in cases involving children subject to sec. 48.18 (criminal proceedings for children 14 or older) or to adjudication as delinquent and persons subject to sec. 48.366 (extended court jurisdiction). Section 977.05(4)(i)5, Stats.