460 A.2d 828

**Denise L. WHITE**

v.

**Ralph E. GORDON, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 15, 1982.

Filed May 20, 1983.

Richard B. Moore, Philadelphia, for appellant.

Louis S. Criden, Philadelphia, for appellee.

Before McEWEN, JOHNSON and HOFFMAN, JJ.

McEWEN, Judge:

The sole issue under consideration in this appeal is whether appellant, a non-indigent male,[1] was denied due process when the lower court ordered him to proceed, without the benefit of representation by counsel, at a paternity hearing which resulted in a finding of paternity by the court and the entry of an order of support against him. We conclude that, under the circumstances set forth herein, the due process rights of appellant were violated and we reverse the order of the Common Pleas Court.

Appellee originally commenced this action by filing a petition for support on October 27, 1978. The docket reflects events of the seven subsequent listings:

12/8/78 Petition. Harris, J. Both present. Petitioner's attorney present. Defendant denies paternity for Anjela Nikkole (order entered by judge) Blood Studies granted. Defendant to pay for Blood tests. List February Trial, Civil Non-Jury.

---

1. The record discloses that appellant was employed full-time as a computer systems analyst manager at the time of the paternity hearing and was receiving a gross weekly income of approximately $250.00 from his employment.

3/1/79 Civil Non-Jury Trial. Meade, J. Defendant absent. Defendant's attorney present. Petitioner absent. Petitioner's attorney present. Defendant's attorney to accept service for Defendant. Continued to 4/18/79 for Civil Non-Jury Trial.

4/18/79 Civil Non-Jury Trial. Meade, J. Both present. Represented by Counsel. Continued next available list by agreement of Counsel. Attorneys will notify the court.

5/23/79 Civil Non-Jury Trial. Meade, J. Both present. Petitioner's attorney present. Continued Next Available List. Continued to 6/4/79 by agreement of Counsel pending possible agreement of parties. Court Room "E".

6/4/79 Civil Non-Jury Trial. Meade, J. Both absent. Continued next available list. Personal Service on both parties. Later: Petitioner's attorney appeared late. Request date certain to 7/24/79, Courtroom E.

7/24/79 Civil Non-Jury Trial. Zaleski, J. Both present. Defense attorney present. Petitioner's attorney present. Continued to 9/21/79 for C.N.–J.T.

9/21/79 Cvil Non-Jury Trial. Zaleski, J. Both absent. Petitioner's attorney present. At request of Petitioner's attorney, Petition withdrawn without prejudice.

The record indicates that when the petition was finally withdrawn at the seventh listing of the case counsel for appellee did so as a result of an informal agreement by appellant to make certain payments to appellee.

Appellee subsequently filed a new complaint for support on August 13, 1980, almost one year after she had withdrawn the first petition, in which she alleged that appellant had "failed to comply with an informal promise to support the child." Both parties appeared in court before the learned Philadelphia Common Pleas Court Judge Jerome A. Zaleski on January 8, 1981, at the initial listing of the case after the new complaint for support had been filed. At that time, appellant denied paternity and the court scheduled the case for trial without a jury on February 4, 1981.

Appellant appeared in court on that date, but without an attorney, despite a warning from the hearing judge at the previous listing that the matter would proceed to trial at the next listing whether or not appellant was represented by counsel. This admonition was delivered in an attempt to avoid any further delay in the conclusion of the case that had been listed for court on eight separate occasions. When the case was called for trial on February 4, 1981, appellant advised the trial judge that his counsel had withdrawn from the case and he had been unable to secure another attorney. The court, nonetheless, ordered the case to proceed to trial and, at the conclusion thereof, the trial judge entered a finding of paternity and imposed an order of support in the amount of $40.00 per week plus an additional $10.00 per week for the arrearage that had accumulated since the filing of the second complaint. New counsel filed this appeal on March 5, 1981 from the order of the Common Pleas Court which determined paternity and fixed the amount of support to be paid. New counsel also filed a petition for reconsideration on March 6, 1981 and, following a hearing on the petition, the petition was denied by order dated May 7, 1981.[2]

This court, in a fine opinion by our distinguished colleague Judge James R. Cavanaugh, recently recognized that denial of counsel for indigent defendants in civil paternity actions in Pennsylvania is inconsistent with due process and, held that "the due process clause of the Fourteenth Amendment to the United States Constitution requires the appointment of counsel for indigent defendants in civil paternity actions in Pennsylvania". *Corra v. Coll,* 305 Pa.Superior 179, 193, 451 A.2d 480, 488 (1982). The court reached this conclusion after it had carefully balanced the three due process factors enunciated in *Mathews v. El-*

**2.** It appears that the Common Pleas Court was without jurisdiction to render a decision on the petition for reconsideration at the time the order of denial was entered, since more than 30 days had passed from the date of the filing of the notice of appeal to this court. *See* Pa.R.A.P. 1701(b)(3) and Comment thereto. This action would, of course, have no effect upon the issue presented for our review in this appeal.

*dridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976), against the presumption that court appointed counsel is constitutionally required for indigent defendants in a paternity proceeding,

The *Corra* court rejected the contention that a defendant in a paternity suit has no presumed right to counsel since an adjudication of paternity cannot directly result in the deprivation of physical liberty and reasoned:

As we have noted, the civil/criminal distinction is unavailing in determining whether counsel is constitutionally required. Thus it is of no moment that paternity actions, once governed by criminal statutes, are now civil in nature. This jurisdiction does not make criminal, and hence punishable by incarceration, the fathering of a bastard child. An adjudication of paternity may, however, result in the future loss of liberty. Once paternity has been established, and a support order entered, a defendant who wilfully fails to comply with said order when he has the financial ability to do so, shall be guilty of a summary offense punishable by up to 90 days imprisonment. We cannot agree with the Public Defender's position that this threatened deprivation of liberty is too remote to justify the appointment of counsel at the hearing at which paternity is established. *Corra v. Coll, supra,* 305 Pa.Superior at 186–187, 451 A.2d at 483–485. (citations and footnotes omitted.)

The instant appeal differs somewhat from the issue addressed by the *Corra* court since the paternity defendant there was indigent, while the paternity defendant in the instant case is not. It appears clear, however, that a potential deprivation of liberty confronts any paternity defendant, whether or not indigent, and, since this court has determined that indigent paternity defendants have a right to counsel, non-indigent paternity defendants must, at least, be afforded a reasonable opportunity to secure representation by counsel to assist in the defense of such claims. Therefore, we conclude that appellant here, although not indigent, should have been granted, under the circumstanc-

es hereinbefore detailed, a reasonable opportunity to retain counsel of his choice to represent him for the trial of the case.[3] Accordingly, we reverse the order of the Common Pleas Court and remand the case to that court for disposition of the paternity proceeding after appellant has been afforded a reasonable opportunity to retain counsel to represent him. Jurisdiction is relinquished.

So ordered.

JOHNSON, J., files a concurring and dissenting opinion.

JOHNSON, Judge, concurring and dissenting:

The majority holds that, because of the ultimate risk for a defendant in a paternity action,[1] a non-indigent defendant must be afforded a reasonable opportunity to secure counsel. With this I heartily agree.

The majority then holds that this defendant was deprived of that right and must have a new trial. With this I disagree.

The first petition for support was filed by the petitioner on October 27, 1978. At a hearing on December 8, 1978, the defendant, represented by counsel, denied paternity. Blood studies were ordered, and a date set for a civil non-jury trial. There were then five continuances, with the defendant still represented by counsel, until September 1979, when the petitioner withdrew her complaint.

The petitioner filed a new petition for support in November 1980. A hearing was held on January 8, 1981. Petitioner and her counsel were present, as was the defendant. The defendant was without counsel. The defendant stated to the court at that hearing that he wished to deny paternity. The following colloquy ensued:

THE COURT: I want to tell Mr. Gordon that the next time we are in court there is going to be a trial. You may

3. The distinguished trial judge did not have, at the time of these proceedings and his decision in 1981, the benefit of the recent decision of this court in *Corra.*

1. *See Corra v. Coll,* 305 Pa.Super. 179, 451 A.2d 480 (1982).

come into court with or without a lawyer, since it is a civil case. If you come into court without a lawyer, you will have to represent yourself. It won't be continued for you to get a lawyer.

THE RESPONDENT: I can understand that.

THE COURT: And if you come back to court and your lawyer says he can't be here, he is busy, we are going to trial. We cannot continue to postpone this matter as we have in the past, because it is really making a mockery of the system. It had been listed at least about eight times, maybe more. So, Mr. Gordon, my advice to you is to be prepared to stand trial at the next listing in this civil case.

Now, before we leave you, do you have an attorney?

THE RESPONDENT: Your Honor, I do not, Sir.

THE COURT: Well, you don't have to. It is better that you have one.

THE RESPONDENT: Yes.

THE COURT: But if you come to court without an attorney, I want to repeat myself, you are going to represent yourself.

THE RESPONDENT: Fine.

THE COURT: Because we are not going to continue it anymore.

Where do you live, Mr. Gordon?

THE RESPONDENT: 1043 E. Vernon Road.

THE COURT: And where do you work, Mr. Gordon?

THE RESPONDENT: I am currently unemployed, Your Honor.[2]

N.T. January 8, 1981 at 6–7.

At the trial on February 4, 1981, the defendant appeared, again without counsel. The following dialogue ensued:

THE COURT: Okay. We are here today for a civil trial. Are you Mr. Gordon?

THE RESPONDENT: Yes, I am.

---

2. At the trial a month later the defendant informed the judge that he had been doing part-time work (20 hours a week) since mid-December, at $250 per week, and that his previous full-time job was as a data processor and computer programmer. N.T. February 4 at 56, 59.

THE COURT: Do you have a lawyer?

THE RESPONDENT: My lawyer withdrew from the case, and so I am currently unemployed, I could not secure another attorney.

THE COURT: Do you know that this is not a criminal case, this is a civil case?

THE RESPONDENT: Yes.

THE COURT: So that if you choose to represent yourself you may do so.

THE RESPONDENT: Correct.

THE COURT: So, Miss White apparently is ready to proceed so we will proceed today with the civil trial. And you will have to act as your own lawyer; do you understand that?

THE RESPONDENT: Yes, Sir.

N.T. February 4, 1981, at 10–11.

The trial began. After direct examination of the plaintiff by her counsel, the defendant conducted a vigorous cross-examination of her. He then presented his own case in an articulate, coherent and lengthy statement. The judge found the defendant to be the father of the child and ordered support payments of $40 per week.

If, in light of *Corra v. Coll,* 305 Pa.Superior 179, 451 A.2d 480 (1982), I apply to these facts the stricter standard used in criminal cases where the issue of a denial of the right to counsel arises, I find that in this case there was no deprivation of due process.

First, the defendant was warned well ahead of time that he must appear with counsel or proceed without counsel. On January 8, 1981, he asked for, and received, a date certain when the continued hearing would be held. On the day of the trial he made no attempt to ask for delay, or to request aid in acquiring counsel, or even to inquire if such aid were possible. He appears from the testimony to have made no attempt to obtain counsel and to have been satisfied to represent himself. I shall however view this matter in light of the cases where a defendant has been refused the time and opportunity to retain counsel.

The allowance of continuances is largely a matter within the discretion of the lower court, and the denial of a continuance does not constitute reversible error unless there is an abuse of discretion. *Commonwealth v. Kittrell,* 285 Pa.Super. 464, 427 A.2d 1380 (1981). The Supreme Court of the United States has said:

[I]t is not every denial of a request for more time that violates due process even if the party ... is compelled to defend without counsel .... Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality .... There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case ....

*Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849–850, 11 L.Ed.2d 921, 931 (1964) (citations omitted) (no deprivation of the right to counsel where the appellant had been given five days' notice of the hearing in question, where the witnesses were available, the evidence fresh and available, two short continuances had already been granted, and a motion for continuance was made on the day of the hearing).

In Pennsylvania the courts have applied a balancing test, weighing the defendant's right to counsel of his choice against the state's right to the efficient administration of justice. *See Moore v. Jamieson,* 451 Pa. 299, 306 A.2d 283 (1973). *See Commonwealth v. Robinson,* 468 Pa. 575, 364 A.2d 665 (1976) (no abuse of discretion in the denial by the trial court of a continuance where privately retained counsel had taken no action to prepare for trial, not communicated with his client, not responded to any notices of the date of trial, one continuance had already been granted, and a substitute counsel had been appointed well in advance of trial); *Commonwealth v. Nicolella,* 307 Pa.Super. 96, 452 A.2d 1055 (1982) (abuse of discretion to deny continuance where on day of trial defendant requested to discharge counsel and retain new counsel because of disagreement

over trial strategy); *Commonwealth v. Carroll,* 306 Pa.Super. 152, 452 A.2d 260 (1982) (no abuse of discretion to deny continuance on day of trial where defendant, represented for four months by public defender, requested time to retain private counsel); *Commonwealth v. Wolfe,* 301 Pa. Super. 187, 447 A.2d 305 (1982) (where defense counsel withdrew mid-trial, substitute counsel was appointed, and no inquiry was conducted into feasibility of defendant's request for time and opportunity to obtain private counsel, it was an abuse of discretion to deny the request); *Commonwealth v. Andrews,* 282 Pa.Super. 115, 422 A.2d 855 (1980) (no abuse of discretion in denying continuance where defendant had appeared at trial seventeen months after his arrest, without counsel, after due notice); *Commonwealth v. Atkins,* 233 Pa.Super. 202, 336 A.2d 368 (1975) (denial of right to counsel where the defendant refused representation at trial by associate of her own counsel and therefore had to represent herself when trial court denied continuance).

In light of these cases it is my view that Mr. Gordon was given due notice of the advisability of counsel, and of the fact that if he appeared for trial without counsel he would have to represent himself. I would therefore find no abuse of discretion or deprivation of due process and would affirm the order of the trial court.